UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JONATHAN JOSEPH GOOD, #197972,

        Plaintiff,

v.

SCOTT GOODELL, et al.,

        Defendants.

_____/

Case No. 2:19-cv-222

Hon. Paul L. Maloney
U.S. District Judge

## REPORT AND RECOMMENDATION

### I.  Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment (ECF No. 54).

Plaintiff in this case — state prisoner Jonathan Joseph Good — filed suit pursuant to 42 U.S.C. § 1983 on November 4, 2019. In his unverified complaint,[1] Good asserted that four employees of the Michigan Department of Corrections (MDOC) conspired and retaliated against him and denied him access to Courts while he was incarcerated at Kinross Correctional Facility (KCF) in Kincheloe, Michigan. On February 24, 2020, this Court dismissed all but Good's claims against Corrections

---

[1] Good included a "declaration of fact" at the end of his complaint. (ECF No. 1, PageID.40). However, that declaration did not conform to the requirements of 28 U.S.C. § 1746(2), which requires a clause substantially similar to "I declare (or certify or verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).  (Signature)."

Officer (CO) Goodell and Prison Counselor (PC) MacLean.[2] Those claims are: (1) denial of access to courts against CO Goodell (Claim 1), (2) civil conspiracy against CO Goodell and PC MacLean (Claim 2), (3) retaliation via denial of legal property against CO Goodell (Claim 3), and (4) retaliation via false misconduct ticket against CO Goodell (Claim 4). (ECF Nos. 7, 9.)

CO Goodell and PC MacLean now move for summary judgment, asserting that: (1) Goodell did not intentionally impede Good's access to courts, (2) Good's conspiracy claims against Defendants fail because his access to courts claim fails, (3) Good's property-based retaliation claim against Goodell fails because Good cannot show protected conduct or adverse conduct, and (4) Good's misconduct-based retaliation claim fails because Good cannot show that Good's protected conduct motivated Goodell's adverse action. (ECF No. 55, PageID.655-670.) Defendants also argue that they are entitled to qualified immunity because they did not violate any of Good's clearly established rights. (*Id.*, PageID.670-672.)

In response, Good asserts that: (1) Goodell did intentionally impede his access to courts, (2) Good was engaged in protected conduct prior to Goodell barring access to his legal property, namely complaining to Goodell's supervisor and engaging in prior litigation, (3) Goodell has not shown that he would have written Good a misconduct regardless of whether Good wrote a grievance against him, and (4)

---

[2]   Per MacLean's affidavit, he now serves as the Department Technician at KCF. (ECF No. 55-4, PageID.717.) For the sake of consistency, the undersigned will refer to MacLean according to his position during the incidents underlying this case.

Defendants violated his clearly established rights and are not entitled to qualified immunity. (ECF No. 88, PageID.1035-1057.)

The undersigned finds that there are genuine issues of material fact bearing on whether CO Goodell intentionally precluded Good from accessing his legal materials in time to meet his filing deadline and whether CO Goodell filed a misconduct ticket against Good because Good wrote a grievance against CO Goodell. However, the undersigned finds that there are not any genuine issues of material fact from which a reasonable jury could determine that CO Goodell and PC MacLean agreed to work together to deny Good access to courts, or that CO Goodell denied Good access to his legal property due to Good's protected conduct. Because PC MacLean did not violate any of Good's clearly established rights, the undersigned finds that PC MacLean is entitled to qualified immunity. But because there are genuine issues of fact concerning whether CO Goodell violated Good's clearly established rights, the undersigned finds that CO Goodell is not entitled to qualified immunity at this stage of the case. Accordingly, the undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment as to Good's conspiracy and property-based retaliation claims (Claims 2 and 3), and deny Defendants' motion for summary judgment as to Good's access to courts and misconduct-based retaliation claims (Claims 1 and 4).

## II.   Factual Allegations

In May 2017, Good was incarcerated at KCF in Kincheloe, Michigan, when he learned that he would need medical attention for a heart condition. At the time, he

was litigating a case in the Eastern District of Michigan, *Good v. Heyns*, E.D. Mich. No. 2:15-cv-12064. The magistrate judge in that case had recently filed an R&R recommending dismissal of the case. Good then filed a motion for an extension of time in which to file objections because knew that receiving medical care would limit his ability to object.

At approximately 3:35 p.m. on June 25, 2017, Good was told to pack his property in anticipation of a medical transfer. (ECF No. 1-2, PageID.123.) Good asked to store his property in his cell locker because he did not want to lose his bunk, and he was weary of the property room manager, CO Goodell. (*Id.*) CO Goodell was present at the time of his request, as was CO Goodell's supervisor. (*Id.*) Initially, KCF staff made is sound like Good would be able to keep his property in his cell. (*Id.*) But at approximately 12:30 a.m. the next day, Good was told to pack his property for storage in the property room. (*Id.*) After packing his property as ordered, Good delivered it to the dayroom where it was inventoried by corrections officers. (*Id.*) Good was then transported to MBP without any of his property. (*Id.*) Good had not received an order granting or denying his motion for an extension of time prior to his transfer.

On June 28, 2017, Good went to the Marquette General Hospital for an angiogram. (*Id.*, PageID.124.) During his stay, medical professionals determined that Good would need open heart surgery, which they scheduled for July 3, 2017. (*Id.*) Good's surgery proceeded as planned and on July 9, 2017, Good returned to MBP. (*Id.*) Throughout his stay at MBP and at the Marquette General Hospital, Good

asked various Michigan Department of Corrections (MDOC) employees about the location of his property and was informed that MBP had not received any of his property from KCF. (*Id.*) Ultimately, on July 17, 2017, Good learned that the Eastern District of Michigan had extended his deadline to file objections to the R&R until July 24, 2017. (*Id.*, PageID.130.) At this time, Good decided to decline additional treatment so that he could return to KCF, and to his legal property. (*Id.*)

Upon Good's return to KCF, he was called to retrieve his property from the property room. (ECF No. 1-2, PageID.129.) When Good arrived at the property room along with Martinez Wise, who was assisting him, he was met by CO Goodell and two other KCF staff members. (*Id.*) After being directed to his property, Good realized that his legal property was missing, and inquired as to its location. (*Id.*) CO Goodell informed Good that his legal property was being held under a Notice of Intent (NOI).[3] (*Id.*) The same day, Good submitted a written request to access his legal property under MDOC Policy Directive (P.D.) 04.07.112 ¶ P.[4] (*Id.*) Because he did not receive a response, Good submitted another request on July 21, 2017. (*Id.*)

On July 25, 2017, PC MacLean reviewed two NOIs with Good, both of which had been written by CO Goodell. (*Id.*, PageID.130.) One NOI was for possession of another prisoner's legal property (ECF No. 1-3, PageID.149 (Goodell's First NOI)), and the other was for excess legal property (*Id.*, PageID.147 (Goodell's Second NOI)).

---

[3]  Notices of Intent are used to inform prisoners that their property will be subject to an administrative hearing, such as when the property is believed to be contraband and has been confiscated. MDOC P.D. 04.07.112 ¶ F.
[4]  Under P.D. 04.07.112 ¶ P, a prisoner "shall be provided reasonable access to their stored footlockers within two calendar days of staff receipt of the request."

5

After Good brought deficiencies in one of the NOIs to MacLean's attention, MacLean issued a new NOI (*id.*, PageID.148 (MacLean's NOI)), reviewed the new NOI with Good, and then proceeded with the hearing on the other NOI (ECF No. 1, PageID.130). MacLean ordered the destruction of the legal property in Good's possession that belonged to another prisoner. (ECF No. 1-2, PageID.130.) He then took Good to the property room to itemize his remaining legal property. (*Id.*) After itemization, MacLean took the property to the Hearings Office to await a hearing on the new NOI that he had issued. (*Id.*) That hearing was conducted on July 27, 2017. The hearing officer determined that the remaining property was authorized excess legal property, and ordered it returned to Good. (*Id.*) The same day, MacLean ordered Good to take the excess legal property to the property room for storage. On August 11, 14, and 17, 2017, Good made additional requests to access his legal property, but never received a response. (ECF No. 1-2, PageID.132.)

On August 16, 2017, Goodell confronted Good in the chow hall, asking Good why he attended chow with the rest of his unit instead of attending at an earlier time in accordance with his medical detail for a low sodium diet. (ECF No. 1-2, PageID.131.) Good believed Goodell's intention was to single him out and harass him. Thus, on the same date, Good wrote a grievance against Goodell for the interaction. (*Id.*) After watching Good write the grievance, Goodell issued Good a Class II Misconduct for being out of place. (*Id.,* PageID.132.) Good was subsequently found

6

not guilty on the misconduct.[5] (*Id.*) Later, Goodell "ranted" to other officers about Good's grievance but told them that he was not worried because the misconduct he had issued would defeat Good's grievance. (*Id.*)

### III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### IV. Access to Courts (Claim 1)

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *Lewis v. Casey*,

---

[5] More specifically, the misconduct hearing officer found that Good was supposed to receive a special diet callout as indicated by Goodell. (ECF No. 1-4, PageID.192.) But through no fault of his own, Good had not been receiving the callout. (*Id.*)

7

518 U.S. 343, 354 (1996). Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds v. Smith*, 430 U.S. 817, 824-828 (1977)). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)).

In order to state a viable claim for interference with his access to the courts, a plaintiff must show actual injury to pending or contemplated litigation. *Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). He must then establish that the state actor who caused the injury acted with more than mere negligence. *Sims v. Landrum*, 170 F. App'x 954, 956 (6th Cir. 2006). Such intent must be established by more than "conclusory allegations or legal conclusions masquerading as factual conclusions." *Id.* (quoting *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005)).

Here, Defendants do not contest that Good suffered actual injury when he missed the deadline to file objections in *Good v. Heyns*.[6] (ECF No. 55, PageID.655-656.) Instead, Defendants claim that Good's access to courts claim must be dismissed

---

[6] The undersigned notes, however, that it is unclear why Good did not move for another extension of time upon realizing that he was unable to access his legal property, or file a motion for reconsideration or appeal after the R&R was adopted.

because CO Goodell did not intentionally interfere with Good's access to courts. (*Id.*, PageID.656.)

According to Defendants, Goodell was simply performing his functions as the property room officer when he processed and sorted through Good's property upon Good's transfer to MBP. (*Id.*, PageID.659.) And Goodell wrote Good a NOI for the sole reason that Good possessed the legal property of another prisoner, contrary to MDOC policy. (*Id.*) Goodell says that he had no knowledge of Good's court deadline, did not receive any letters from Good regarding his need for the property, and was not aware of grievances filed against him or other officers. (ECF No. 55-10, PageID.773.)

In response, Good asserts that Goodell intentionally barred his access to courts by refusing to transfer Good's legal property to MBP during Good's medical stay, and refusing to allow Good to access his legal property once he returned to KCF after surgery. (ECF No. 88, PageID.1035.) Good makes various arguments in support of his position. Most of these arguments are either speculative or irrelevant to Good's access to the courts claim.

For example, Good provides a list of actions that Goodell failed to take in violation of KCF's operating procedures, such as failing to write the NOIs for Good's property within 24 hours and to immediately forward them to supervisory staff. (*Id.*, PageID.1036.) These inactions, according to Good, resulted in "no inquiry" as to whether Good had any upcoming court deadlines. (*Id.*) But Goodell's adherence to

9

procedures, or lack thereof, does not create an issue of fact bearing on the Goodell's intent to prevent Good from accessing the courts.

Good then points to an email sent by Goodell on June 25, 2017, in which Goodell stated:

> We are sending you a prisoner Good 197972 tomorrow. He's going to the level V [sic] medical reasons. I'm not sending his property. He is a legal writer with a ton of property. If he stays for along [sic] time and needs it let me know. He will have his KOP meds with him.

(ECF No. 88-5, PageID.1069.) According to Good, this email, sent just after Good told Goodell's supervisor that he did not want to store his property with Goodell, establishes that Goodell intentionally denied Good's access to his legal materials while at MBP. (ECF No. 88, PageID.1038.) He says that the only reasonable motivation behind Goodell's email, sent before Goodell had processed Good's property, was Good's prior statements to his supervisor. (*Id.*) This assertion plainly constitutes speculation, and once again does not create an issue of fact bearing on Goodell's intent. In fact, the email suggests that Goodell was willing to send the legal property upon request if Good's stay at MBP was extended.

But in addition to those arguments depending on speculation in which the undersigned will not engage, Good says that he notified Goodell of his upcoming deadlines via letters sent to the property room beginning July 19, 2017, which are attached to his complaint. (ECF No. 1-2, PageID.133-134.) The undersigned finds that this is sufficient to establish a genuine issue of material fact as to Goodell's awareness of Good's deadline beginning July 19, 2017. Based on the record, it is the opinion of the undersigned that, construing the facts in the light most favorable to

10

Good, a reasonable jury could find that Goodell intentionally denied Good access to courts.

## V.     Civil Conspiracy (Claim 2)

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (*quoting Hooks v. Hooks*, 771 F.2d 935, 943 44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Defendants argue that Good's conspiracy claim fails because there was no denial of access to courts, and because Good has not shown that CO Goodell and PC MacLean shared a common plan to violate Good's constitutional rights. (ECF No. 55, PageID.662.) In response, Good asserts that when he was called to review the NOIs issued by Goodell with MacLean, he (Good) realized that one of Goodell's NOIs was deficient in several respects and brought the deficiencies to MacLean's attention. (ECF No. 88, PageID.1047-1048.) PC MacLean responded by issuing a new,

11

compliant NOI. (*Id.*, PageID.1048.) MacLean then reviewed the new NOI with Good and held a hearing on the other NOI issued by Goodell. (*Id.*) According to Good, MDOC Policy provides that the individual who writes an NOI cannot also review the NOI. (*Id.*)

Good also takes issue with the fact that after he received a hearing regarding his excess legal property, PC MacLean made him pick one duffel bag of legal property and store the rest with CO Goodell. (*Id.*) Good says MacLean then sent a "bragging email" to Goodell about the incident. (*Id.*, PageID.1049.) That email exchange is shown below.[7]

> **From:** MacLean, Wallace (MDOC)
> **Sent:** Thursday, July 27, 2017 9:29 AM
> **To:** Goodell, Scott (MDOC)
> **Subject:** RE: Good contraband footlockers.
>
> I'm sorry Scott I meant to email you on this matter. I have heard him on the footlockers and took them from him. I have to lockers in my H-1 storage closet right now waiting to figure out what to do with them. He just went this morning to hearings and was told he could order I believe 2 legal footlockers (I have not seen the report yet). He just got done repacking the legal property and has it down to three bags, one of which he is keeping here and the other two bags are being taken over to the property room as I am typing you this.
>
> **From:** Goodell, Scott (MDOC)
> **Sent:** Wednesday, July 26, 2017 8:11 PM
> **To:** MacLean, Wallace (MDOC)
> **Subject:** Good contraband footlockers.
>
> Do you happen to know where prisoner Good,s 197972 two footlockers went? One was a black plastic one that was discontinued in 2004, but im awaiting word from lansing about his ability to keep due to it being made of plastic. The blue metal one I never found where he purchased it.

(ECF No. 88-10, PageID.1083.)

---

[7] Later, Good points to another email exchange between Defendants and a third URF employee, in which Defendants express frustration about Good's ongoing complaints regarding the storage of his legal property but say nothing about pending litigation or a plan to obstruct his access to courts. (*Id.*, PageID.1085-1088.)

Because the undersigned finds a genuine issue of material fact concerning Goodell's intent to deny Good access to courts, the undersigned cannot agree that Good's conspiracy claim fails on that basis. However, Good's allegations of conspiracy are plainly insufficient to create a genuine issue of material fact as to whether Defendants had a shared plan to violate his constitutional rights. Good has provided no evidence establishing a link between the alleged conspirators or any agreement between them. He relies instead on a highly attenuated inference from the mere fact that PC MacLean was the individual who reviewed the NOIs issued by CO Goodell, and that MacLean and Goodell communicated about the storage of Good's property after his missed court deadline. As the Supreme Court has recognized conduct that is "not only compatible with, but indeed [] more likely explained by, lawful, unchoreographed . . . behavior" is insufficient to state a claim. *Iqbal*, 556 U.S. at 680. In the opinion of the undersigned, Defendants' conduct is just that, and Defendants are therefore entitled to judgment on this claim.

## VI. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* The Sixth Circuit has repeatedly held that "protected conduct

includes a prisoner's 'undisputed First Amendment right to file grievances against prison officials on his own behalf.'" *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir.2000)). "If the grievances are frivolous, however, this right is not protected." *Id*. "Abusive or manipulative use of a grievance system [is] not…protected conduct,' and prison officials may take action in response to the prisoner's improper use of the grievance process as long as the response aligns with a legitimate penological goal." *Griffin v. Berghuis*, 563 Fed. App'x. 411, 416 (6th Cir. 2014) (citing *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)).

After a prisoner establishes the first two elements, the prisoner must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (*citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Once the prisoner has shown that his protected conduct was a substantial or motivating factor, the burden shifts to the defendant to "show that he would have taken the same action in the absence of the protected activity." *Thaddeus-X*, 175 F.3d at 399. If the defendant satisfies this burden, he is entitled to summary judgment despite the prisoner's demonstration of the aforementioned factors. *Id*. Good asserts two claims of retaliation against CO Goodell.

### a. Denial of Access to Legal Property (Claim 3)

Good's first retaliation claim involves multiple instances of protected conduct leading CO Goodell to deprive him of his legal property. This alleged protected

conduct included: (1) assisting another prisoner in preparing a request for declaratory ruling against Goodell, (2) complaining about Goodell to his supervisor when he was asked why he did not want to store his property in the property room, and (3) filing prior lawsuits against MDOC officials. (ECF No. 1, PageID.29.) Defendants initially asserted that part of the reason Good's retaliation claim fails is that the possession of another prisoner's legal property violates MDOC P.D. 04.07.112 ¶ O, so the preparation of the declaratory ruling was not protected conduct.[8] (ECF No. 55, PageID.666.) After Good pointed out in his response that Defendants had not addressed the verbal complaint to Goodell's supervisor or the prior lawsuits (ECF No. 88, PageID.1053), Defendant replied, conceding that the verbal complaint "appears to meet the threshold for protected conduct," as does the prior litigation (ECF No. 90, PageID.1109). However, Defendants assert that the claim still fails because Goodell did not take any adverse action against Good. (*Id.*)

There is no question that CO Goodell issued NOIs to Good, resulting in the confiscation of Good's legal property. In the opinion of the undersigned, genuine issue of fact remains regarding whether such conduct would deter a person of ordinary

---

[8] The undersigned notes that although P.D. 04.07.112 ¶ O prohibits the possession of another prisoner's legal property, it is not clear based on the information on the record that helping another prisoner prepare legal documents is prohibited conduct. The record is also unclear as to whether the other prisoner was able to pursue his claims independent of Good's assistance. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("[A]n inmate does not generally have an independent right to help other prisoners with their legal claims . . . . Such assistance is protected, however, when the inmate receiving the assistance would otherwise be unable to pursue legal redress."). Ultimately, this issue does not affect the resolution of the motion for summary judgment.

firmness from engaging in protected conduct under the circumstances of this case. However, Good has not created a genuine issue of material fact as to whether his protected conduct was a motivating factor behind Goodell's issuance of the NOIs. Instead, the record reflects that Good was in possession of another prisoner's legal property in violation of MDOC Policy. It further reflects that Good agreed to the destruction of the other prisoner's legal property. (ECF No. 1-3, PageID.149.) Nothing on the record establishes that CO Goodell was aware of Good's prior lawsuits at the time he issued the NOI and confiscated Goodell's property. Nor does anything on the record, aside from temporal proximity, so much as suggest that Goodell issued the NOI in response to Goodell's verbal complaint against him. *See Hill*, 630 F.3d at 476 ("Although this court has concluded that evidence of temporal proximity between filing grievances and the adverse action provides some support for establishing retaliatory motive, it has been reluctant to find that such evidence alone establishes retaliatory motive." (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 526 (6th Cir. 2010)). Accordingly, the undersigned finds that Defendants are entitled to judgment on this claim.

### b. Retaliatory Misconduct Ticket (Claim 4)

Good's second retaliation claim concerns an August 6, 2017 misconduct ticket that Good says CO Goodell issued after he witnessed Good writing a grievance against him. Defendants say that this claim fails because there is no evidence of requisite causation. (ECF No. 55, PageID.667.) According to CO Goodell's affidavit, Goodell was unaware of any grievance written against him. (ECF No. 55-10,

PageID.773.) But in Good's response to Defendants' motion for summary judgment, he points to an email sent by CO Goodell on September 9, 2017, which specifically states, "I tried to get [Good] on grievance restriction, as he grieves me at least twice a week." (ECF No. 88-10, PageID.1804.) Curiously, Defendants assert that CO Goodell "doesn't admit to the knowledge of Good filing a grievance against him in any of [the emails]." Perhaps what Defendants mean to say is that the emails do not establish that Goodell was aware of Good's August 6, 2017 grievance when he issued the misconduct. Regardless, Good asserts in his affidavit that CO Goodell came into Good's unit and looked over his shoulder at the grievance, before walking away to write the misconduct. (ECF No. 1-2, PageID.131-132.) Furthermore, Good attached the affidavits of Martinez Wise (ECF No. 88-13, PageID.1097-1098) and Tracy Cecil Hammond (ECF No. 1-4, PageID.181) in support of his claim.

In Wise's affidavit, he confirms watching the interaction between Good and Goodell in the chow hall, and then returning with Good to their unit, where Good sat down to write a grievance against Goodell. (ECF No. 88-13, PageID.1097-1098.) As Wise exited the unit on his way to work, he says that he watched Goodell enter the unit. (*Id.*, PageID.1098.) In Hammond's affidavit, which is illegible in parts due to poor copying, Hammond states:

> CO Goodell claims that when he returned to H-Unit after chow-lines, Good was writing a grievance at the dayroom table. As CO Goodell said this, he started laughing that the grievance would never get heard because he, Goodell, had written Good an "out of place" class II misconduct.

(ECF No. 1-4, PageID.181.) Hammond says that he overheard a variety of similar conversations between Goodell and other officers. (*Id.*) In the opinion of the undersigned, these affidavits are sufficient to create a genuine issue of material fact as to whether Good's grievance motivated CO Goodell to issue Good a misconduct ticket.

## VII. Recommendation

The undersigned respectfully recommends that the Court grant Defendants' motion for summary judgment as to Good's conspiracy claim and property-based retaliation claim (Claims 2 and 3), and deny Defendants' motion for summary judgment as to Good's access to courts and misconduct-based retaliation claim (Claims 1 and 4).

If the Court accepts this recommendation, Good's claim against CO MacLean will be dismissed, and Good's access to courts and retaliation claims against CO Goodell will remain.

Dated:   February 23, 2022                         /s/ *Maarten Vermaat*
                                                   MAARTEN VERMAAT
                                                   U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).